Next case is number 24-2027 United States against Safehouse. Is Eisenstein? Good morning, Your Honor. May I reserve three minutes for rebuttal, please?  May it please the Court, Melana Eisenstein. I represent Safehouse and Jose Benitez. Safehouse is a nonprofit corporation founded by deeply religious people in response to the opioid and overdose crisis in Philadelphia. At the core of Safehouse's beliefs are that life is sacred, that preservation of life is paramount, and that it is a religious calling to provide medical care and to preserve life at all costs to the most vulnerable among us, including those suffering from addiction. Safehouse seeks to carry out that religious commitment to providing life-saving overdose prevention services, medical care, and shelter to those at greatest risk of overdose. Following well-settled Supreme Court precedent, specifically the Hobby Lobby decision, which established that corporations may assert religious liberty claims, Safehouse has pleaded both RFRA and First Amendment claims that the government has substantially burdened this exercise of religious liberty by declaring that Section 21 U.S.C. Section 856 criminally bars Safehouse from providing shelter and immediate medical care to those at most risk of overdose when they need it most, which is at the moment of consumption. It is at that moment when seconds and minutes make the stark difference between life and death and serious injury. The district court did not dispute these facts or pleadings, nor did it or the government challenge the sincerity of Safehouse's beliefs. Instead, it incorrectly held that Safehouse as a nonprofit corporation may not assert religious liberty rights unless it expressly included religious purpose in its articles of incorporation or bylaws. That is incorrect for a range of reasons. First, it's incompatible with RFRA's plain text as interpreted by the U.S. Supreme Court and Hobby Lobby, which held that RFRA protects the religious liberty of for-profit corporations. You know, I thought I knew something about Pennsylvania nonprofit corporation law until I get into this case. Maybe I didn't know anything really, but when I get into the case, this non-stock corporate entity, what is it? So, your honor, I don't necessarily believe that that's the accurate term for just a nonprofit corporation. All nonprofit corporations are non-stock in the sense that they don't have owners or shareholders, and that's why the not-for-profit law of Pennsylvania empowers the corporation as a whole, and in particular, the board of the nonprofit as determining the means and effect and purposes of the organization. And that's where I think that the district court went, you know, fundamentally astray. The district court asserted that under Pennsylvania law, that a nonprofit corporation's purpose is solely dictated by its articles of incorporation. Why wasn't the district court correct on that? Because the articles of incorporation can be far broader, like in this case, the safe house is incorporated for general charitable purposes, but that's not exclusive of being motivated by religious beliefs in order to effectuate those purposes. So, the purpose of the organization and general charitable, by the way, is one of 27 categories that a... I think we, I can, I guess I can only speak for myself, but we've been on, I've been on a lot of non-profit boards, and I assume they're all nonprofit corporations because there was a nonprofit corporation law, and a reform for a charitable purpose, which fell within the scope of what the entity was doing. And you have a whole host of them around this Commonwealth. So, I'm just, I guess I'm troubled by the fact that there's nothing here on record that shows that there's a religious purpose to safe house. Well, let me disagree with you there, your honor, because we have pleadings. And what this court recognized in Davis versus Wigan... It gets to the question, is that enough? So, your honor, we believe that what we have pleaded is enough, because, let me specify, and let me also draw an analogy to Hobby Lobby and the three corporations that were within Hobby Lobby. The government is absolutely incorrect that those for-profit corporations, Hobby Lobby itself, the Conestoga Wood Corporation, or the Marston Book Corporation, incorporated for religious purposes, or had anywhere in their articles of formation or incorporation, including Conestoga Wood, which is a Pennsylvania corporation, just like Safe House. None of them had in their bylaws or their articles of incorporation a statement of religious purpose. Rather, just like Safe House, those organizations adopted statements of vision and values, a mission statement, or pledges by the owners or operators that they would act in accordance with religious purpose. And the Supreme Court... You say you're similarly situated to them because you have a mission statement. Correct, your honor. And they had a vision and value statement and a corporate statement of purpose. Exactly. Well, we have a mission statement and we have pleadings that assert that the number one, that the purpose and beliefs of the Safe House board are the purpose and beliefs of the Safe House organization. Something, by the way, that's hardly a stretch when at this point, since Safe House has been prohibited from operating its core purpose, Safe House is only its board of directors and executive director right now. They put you on a better footing that you're a nonprofit, whereas Hobby Lobby, Conestoga Wood, and Marston were for-profit corporations? We are at least on equal footing, if not better footing. In fact, the government conceded and argued itself in Hobby Lobby that certainly nonprofit corporations could assert religious rights, but disputed that for-profit corporations that are incorporated for the primary purpose, and those corporations for the primary purpose of making money, they are for-profit corporations after all, could nevertheless assert religious beliefs and exercise religious rights. In those cases, to oppose paying for insurance that may ultimately fund contraceptive care. And the Supreme Court, so it was really not in doubt in that case that nonprofit corporations would have these rights. And that's why it's strikingly odd here that the court would have hinged on the nonprofit status and the lack of owners to say that Safe House cannot plead such a claim. Rather, you know, to go back to Judge Fischer's question, if you take a look at the nonprofit corporation law under Pennsylvania, it does vest the authority to act for a nonprofit corporation in the board of that corporation in accordance with the bylaws of the corporation. The bylaws of Safe House are in the record at 258 and just plainly vest the power in the board to act. And here we have pleaded that the board has acted. In your pleadings, do you assert how many or what percentage of your board members are motivated by Judeo-Christian purposes? We assert all of them are. All of them? Yes. What happens if one was not? I still don't think that's determinative, Your Honor. What if you said we have 12 board members and 10 of them are motivated by Christian purposes? So it's a question of corporate governance and fact, Your Honor. So we have asserted in this case and at this time that all of the board members share a common belief in the sanctity of life that's motivated by their Judeo-Christian beliefs. We've rooted that in scripture and the scripture to which the board members believe. We have also cited particular board members who are clergy members, theologians and devoted former seminarians and devoted religionists. To pick up on the question, what if six of the 12 or what if two of the 12 were religiously motivated? So, Your Honor, the question is not, you know, the number of board members that are religiously motivated. It has to do with the governance of the corporate entity. So just like any corporation and this is what Hobby Lobby said, by the way, Hobby Lobby grappled with the question of how do you tell what are the beliefs of a corporation? It addressed it specifically and it said you turn to it's a question of fact. And by the way, we were dismissed on the pleadings and we pleaded this as a factual matter. It's a question of fact and a question of corporate governance under state law and the governing documents of the organization. The governing documents of this organization vest power to act within the board and the board is set up a structure for determining its mission, its statement and its values. So it's objective. It's not sort of take a poll of the current board of directors or something like that. And if the current board of directors want to go in a different direction, they're going to be bound by the corporate documents unless and until they alter them. That's right. If they were to alter the mission of the organization or they were to change the motivation, I would take one issue Judge Hardiman with what you said is subjective. I think the evaluation of corporate law and the corporate governance structure is objective. But I think the determination of whether or not the motivation for particular action is religious in nature and rooted in sincere religious beliefs is a subjective. Well, the sincerity is subjective, but when I was using the word objective in terms of you can actually read the documents. That's right. It's not sort of fuzzy opinions by a bunch of directors in depositions. It's read the corporate documents. The corporate documents and the processes by which the board makes decisions. Some boards make decisions by consensus. Some boards make decisions by votes, some by committees and other structures. And here the district court leaned into the corporate documents. The judge wrote safe houses articles of incorporation do not set forth any religious mission or activity. So if the task here is to look at the corporate documents, why was he wrong to say that? Because the incorporation documents are not what governs why or how the exercise of belief. It's actually not really a place where in the articles of incorporation one would include your reason for incorporating as such. The corporate documents are just that. They're articles of incorporation and there's no reason why having incorporated for general charitable purposes, just like how Hobby Lobby incorporated to be an arts and crafts store or Conestoga Wood to provide wood supply, that it can't subsequently articulate a religious exercise that's been severely burdened, substantially burdened by government action. Can we switch from religious motivation to free exercise for a minute? Assume that you have an organization just like Safe House, religiously motivated in all the same ways, same people even, but instead of a place where people can take drugs, let's say that the place is established to enable sex workers to come and to practice their trade in a more dignified and a safer place away from the intimidation and the abuse of their pimps and so on. Would that be okay? Well, when you mean okay, would that be a sincere exercise of First Amendment rights or would it be a violation of First Amendment rights if the government enforced... I'll stipulate the sincerity. Would it be a violation of First Amendment if the government were to enforce particular laws that might prohibit that activity? Yes, the latter. I think on that latter question, the question would be whether the law is one of general applicability or whether the enforcement was somehow motivated by animus against the religious beliefs, assuming they're sincere religious beliefs. And, you know, that would be a question you'd have to look at based on the long question. Here, we have asserted, and in fact, the Supreme Court in Ocentro found that the Controlled Substances Act is subject to exceptions. We've asserted the exceptions. We've also asserted that Section 856 has never in its 30-year history been applied in any even closely analogous context, including in no situation where property was used for just simple use as opposed to manufactured distribution. It's not exactly, this wasn't exactly a widespread practice. It was, well, this was... Safehouse was the first of its kind, wasn't it? Well, this wasn't a widespread practice, but the use of drugs and property, yes, is a very widespread practice. They just don't usually ask permission ahead of time. You had the courtesy of asking for permission ahead of time. That may be, Your Honor, but certainly the use of, I think, judicially noticeable fact that the use of drugs and property is something that has been, commonly occurs, and that Section 856 has not been applied to prosecute a homeowner. It's not uncommon though for forfeiture though, right? I mean, when a house is used as a meth lab, the government grabs the house. Certainly when it is used for the manufactured distribution or storage, but we, throughout this litigation, the government has not been able to point to a single case where they have prosecuted or forfeited, for that matter, and forced Section 856 in a case of just pure use, simple use or simple possession within a property. And so from a First Amendment perspective, Your Honor, I think it goes to whether or not this is a rule of general applicability, which, you know, the Supreme Court in Fulton, this court in Vivac has looked at, and then the question is whether the, you know, if there are exceptions, whether that exception should be, therefore, accorded to those asserting religious basis for their activities as opposed to secular basis for their activities. In fact, in the case of the Controlled Substances Act, there are exceptions for religious purposes, including the peyote exception, but they have not provided exception for Safe House to provide life-saving care that it seeks to provide. I see my time is up, but I'm happy to answer questions and I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Your Honor. Mr. Sturgill. Good morning. May it please the Court. I'm Lowell Sturgill from the Department of Justice representing the United States. Under Safe House's theory of the case, any nonprofit corporation in America could demand a roofer exception from any law merely by reciting that the board is religious and has a duty to do good, a religious duty to do good. And that's the case in their opinion, even if there's nothing in any of its corporate documents that binds the corporation to operate according to their religion. That's what they pled. No, they didn't, Your Honor. They have not pled that there's anything in any corporate document that binds the corporation. Well, first of all, if my first point is their theory is too broad, and my second point is what I was getting to is there's nothing, there's nothing, the difference between this and Hobby Lobby, there's nothing in any of the documents here, corporate documents that binds the corporation to follow and operate according to what we have heard of the religious views of the board. Is a mission statement a corporate document? It can be, but it does not bind the board. At first, it doesn't reflect that the board took any vote on this. That's unlike the Mersino management case, which the plaintiff still, but let's just stick with Hobby Lobby and Conestoga Wood. There are articles of incorporation in those cases. Did they state a religious purpose? Though I don't believe the opinion recites that they did, but in Hobby Lobby, the court's opinion recites that the corporation operated through a management trust, which was required to be governed by the family's religious principles. So you had a family trust. I'm sorry. No, that's okay. And in Conestoga Wood, my understanding is they had a vision and value statement that was adopted by the board. Okay, right. By that, I understand. Here, Safehouse has a mission statement. Those sound quite similar, but I take it your argument is that the mission statement is insufficient because it was not formally adopted by the board. Is that what the case hinges on? Well, that's the first point. The second point here is that Safehouse, unlike in Hobby Lobby, has affirmatively pled in his counterclaims that it is not a religious corporation. It is a site doesn't have to be that that was striking to me. Please correct me if my understanding is wrong, but on page two of the district court's opinion, the court wrote because I am persuaded that Safehouse is not a religious entity. I will grant the motion to dismiss. Well, Hobby Lobby was not a religious entity. Conestoga Wood, these are for-profit corporations. They are in the business of making money. Granted, they're in the business of making money through a decidedly religious impulse. But here, Safehouse is in the business of alleviating suffering and saving lives, etc. That's their stated purpose. And they have pleaded that they are religiously motivated. So why isn't this case just like those? Again, the key considerations are there's nothing in any of Safehouse's documents that binds Safehouse to operate consistently with the board's expressed religious beliefs. And you've asked some questions this morning about, well, what about when you say, sorry, when you say nothing in Safehouse's what you mean is their corporate formation documents, correct?  Well, what about the vision statement? The vision statement doesn't require Safehouse to operate consistently with the board's religious beliefs in any kind of formally operative way. All right. So the key linchpin for you is there has to be a corporate document that obliges the corporation to act out of religious impulse. Yes. Otherwise, it's just far too removed from the facts of Hobby Lobby and would open up. All right, but you concede, I assume, that it doesn't have to be a, quote, religious entity as the district court said. That's not accurate. Well, I think it makes a difference because what Safehouse is trying to do is have it both ways. They want to say on the one hand, well, you know, the corporation is a purely secular entity. On the second hand, they want to be asserting this very unusual right to religious conceptions. Where are they? It's, I mean, it's RFRA. RFRA is a remarkably broad law that puts not only a thumb on the scale, but two feet on the scale of religious exercises. Is that not accurate? Well, that's correct. But I would point the court to Laboon from this court where the court held that it's important in determining, that was a Title VII case, but whether a religious corporation is entitled to protection under Title VII, how the corporation holds itself out to the public. And here, Safehouse holds itself out. Well, I don't think Title VII cases have a lot of salience in the RFRA area. I think, I mean, RFRA cases need to be evaluated sui generis, don't they? Because of the remarkable breadth of the statute. RFRA and RLUIPA are remarkably broad, and they give citizens religious rights that are quite far in excess of their First Amendment rights. Isn't that true? Agreed. So our Hobby Lobby didn't hold itself out to the public as a religious business, right? It's an arts and crafts business. Through the litigation, it became sort of well-known that the Green family operated out of religious convictions. But the corporation just was an arts and crafts business, I think. Is that right? So again, the key there was the Supreme Court held that Hobby Lobby was, could assert religious beliefs because it was closely owned and controlled by the family, which it was essentially the family was the corporation's alter ego for the family. Let's get back to Pennsylvania law. Under Pennsylvania law, for a nonprofit corporation, the Board of Directors control, the actions of the Board of Directors are the actions of the corporation. I would agree with the first statement, but not the second. The Board of Directors controls, but just because the board, you know, the actions of the Board of Directors control the corporation, do they not? Sure. Yes. Okay. And they plead in their pleadings that, you know, even the Sanctity of Life, Judeo-Christian members of the board, that's how the board operates. I don't see how that distinguishes this case from Hobby Lobby. Again, the board hasn't taken any official vote, or there's nothing that binds the board. The pleadings say they did, maybe at the next stage, you know, you're able to prevail in a different way. But aren't we, are we stuck with the pleadings that were the pleadings and the counterclaim? There's, with respect, I think there's too much uncertainty here, and that there wasn't in Hobby Lobby. Judge Port- Part of the reason there's uncertainty, it's a rule 12, right? When you don't have any discovery, it sort of follows that you don't really have anything to go on except the pleadings, by definition. So, first of all, they pled themselves as being a secular corporation, and they haven't pled anything that would suggest there is- But they don't, that's not- similar control as it was in Hobby Lobby. Okay, but, but how is it, how is it disqualifying for them? How did they plead themselves out of a cause of action by saying they're secular, when you've got for-profit corporations in Hobby Lobby that didn't, didn't plead themselves out of the case? So the pleading if they're secular is part of it. I think that's relevant. It's not dispositive. What is dispositive, in addition to that, is that again, they haven't shown you any, they haven't pled that there's anything in any of their documents that binds a corporation to operate consistently with the religious views of the board. And if I could just follow- All right. So I just want to make sure I understand your position because I, I think it's, it's quite logically coherent. What I hear you saying is that, that in order to get past the motion to dismiss, a not-profit that does what Safehouse does, needs to plead not only that they are motivated by Judeo-Christian or other religious beliefs, but also that there is some corporate document that binds them to pursue that mission. Yes. Okay. And if I could follow up, and I think it was Judge Porter's questions, it might have been Judge Fisher's as well, about some of the uncertainties I was mentioning. One wonders why, and we don't know why, Safehouse has never taken any official action by the board, which apparently never voted, to require Safehouse to operate consistently with the intentions of the board. Maybe that's because they want to allow the board- Well, they might not want to get criminally prosecuted. That would be one reason not to do too much until they get approval to do what they're doing. What they're doing is perhaps a violation of federal law, right? Well, they might want to allow the board to add non-religious board members, and you could have a situation where you suddenly have a majority of secular board members, and you don't have, again, any requirements that those people, that Safehouse operates consistently with the religious beliefs of those folks. On the binding document part, the or a statement of vision and values or something, and then that's it. And then in the operation of the business, the board's kind of responsible to police the organization and make sure that everybody who works there is mission-aligned and so on. If they're not, they're out. But I don't, I'm not familiar with the concept of some binding document being required. It wouldn't be as a matter necessarily of corporate law, but it would be under RFRA because it comes from Hobby Lobby itself, where the key thing is, again, Hobby Lobby allowed Hobby Lobby, the Supreme Court allowed Hobby Lobby to assert the religious rights of the owners because it was closely held. It was a one-to-one identity between the owners and this closely held corporation. And as I mentioned, the Hobby Lobby itself, like a management trust required the family to operate the business consistent with the views of the family. So that, but Conestoga Wood didn't have that. I'm sorry, Conestoga Wood didn't have that and they won too. So again, Conestoga Wood, the board adopted a statement that basically said this view about human life is going to be binding on the corporation. So I think you have a, in a different form, the same kind of control, controlling document, and that's what's missing here, bottom line. Again, I stress how broad plaintiff's theory is. They don't have a limiting principle for the hypothetical I gave you, where any nonprofit corporation in America under their view can merely say, oh, well, our board is religiously motivated and we're out there to do good. So anything we want to do is now exempt from federal laws. They could want, let's say, for example, I'm sorry. Let me ask you the question, a DOJ question. Is DOJ ever proceeded against On Point New York City? Not to my knowledge. This sort of goes to one of the questions Judge Porter asked about the sex workers hypothetical, and the answer you got was that if the plaintiffs could assert a substantial burden and a religious right to seek an exception, strict scrutiny would apply, and who knows whether that would be satisfied or not. But I think what you were looking for is could that claim even be asserted, right? Could a plaintiff assert a prima facie RFRA case, which you know, you could change the, it could be prostitution, it could be assisted suicide, it could be, you know, Aztec, it could be any kind of activity. I just wanted to know what the limits are. Exactly, and I think the reason I'm bringing this up is they didn't give you any on the prima facie case part. Anybody under their theory could bring a prima facie case and then the government would be obliged to defend its rule under the strict scrutiny standard, which the Supreme Court has held is the most stringent standard that there is. So this would really vastly complicate the government's ability to enforce important statutes, like the drug laws, anti-sex workers laws, just anything you can think of. It's an extremely broad theory they have that I think falls. Why is it so complicated? Why is it, why would it be so hard for the government to show on remand that the federal law prohibiting injecting heroin or other drugs is a really bad idea? Well, we might be able to. Isn't that sort of obviously a compelling government interest? Well, yes, but there could be cases, I don't know how the sex worker case would work out. Maybe there are exceptions to those sex worker laws that would say that would undermine the government's otherwise compelling interest or not. But I think the point is broadly phrased, allowing plaintiffs to assert RFRA claims and set out a prime and facie case based on just the expressed religious views of the board without any kind of board action at all, nothing in the Articles of Incorporation or bylaws, the 501c3 statement is just opening up RFRA way beyond where Congress intended it and far beyond anything that Hobby Lobby did. They could change it. Could they not? I mean, they could change it if they wanted to.  Yes, sure. Right. I mean, this is, you know, it's a drug case, essentially, just like peyote was a drug case in Smith, which led to RFRA, right? Right, so I'm not sure how that cuts. I think, I think it probably cuts in favor of safe house because it's a prohibitive activity or it's a controlled substance like peyote was, but they want to either take it or enable others to take it safely for religious purposes. And if that interest is burdened, and if the government's not prosecuting everyone the same way for doing that, then they have a pretty good case. So the briefs we filed in district court did address the peyote exception and provided reasons why we think that's distinguishable. And we didn't get into that on appeal because the district court didn't address it, but that would be where our position is on that. I think my time has expired. Thank you. Thank you very much, Mr. Sturgill. Ms. Eisenstein? I want to first address just this notion of binding. This court has never required that in the case of individuals seeking RFRA and Davis or Nunez. Well, individuals don't walk around with mission statements typically, some do, but it's not like a corporation. It's true, Your Honor, but this court hasn't asked those individuals to bind themselves to operating their entire life and existence with respect to their... Because they're individual agents. I mean, there's a reason why we have corporations binding itself because you don't want a cacophony of voices. You want the corporation to have to speak with one voice, right? Completely, Your Honor. And so that's why when it comes to a question of governance, I think the notion of whether a particular actions or beliefs or motivations of the board is binding is a false notion. I think that the question is here. There is a mission statement. It's been adopted by the organization. It has been pled that that is the mission and values of the board of directors and therefore of the organization itself. And that is enough. And I think, you know, Hobby Lobby actually really grappled with these questions. And it's really, if you read the, you know, I'm sure you have read the opinion, Your Honors, but, you know, they talk about what the nature of a corporation is and it being comprised of the people within the corporation. And that is exactly what we've pled and just incongruously the district court suggested that somehow something special needed to happen for nonprofit corporations different from for-profit and we disagree. I want to also just dispute the notion that we conceded that we are secular. I think that the quote that keeps getting misquoted at paragraph 126 of the complaint is in full at the core of all board members faith is the principle that preservation of human life is paramount and overrides any other consideration. Although safe house is not itself a religious entity or organization its founders and leaders beliefs are those of the corporation and the pursuit of its mission and conduct of its business will implement those beliefs. What could be stronger than that? And when we talk about not being a religious entity or organization we mean in the sense of a title 7 exempt religious organization ie a church or an organization that's organized primarily for the purpose of religious activities. We admit that we're not that but that doesn't mean the opposite of that is not secular. There are organizations that are not specifically organized primarily for religious purposes that are nevertheless including many charitable organizations. And in fact some for-profit businesses that in fact have religious beliefs and are motivated to in this case provide life-saving care in furtherance of those religious beliefs. And so with that your honor, I think unless the court has questions we would ask that this court reverse that they remand to the district court to proceed with discovery on our First Amendment and RFRA claims. Thank you very much. Thank you. I appreciate counsel for both sides. The court will take the matter under advisement.